# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DEANGELO JONES-OWENS, | |
| Plaintiff, | No. 19-cv-02266 |
| v. | Judge John F. Kness |
| XAVIER TAYLOR *et al.*, | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff DeAngelo Jones-Owens, a former inmate of the Illinois Department of Corrections ("IDOC"), sued various IDOC employees under 42 U.S.C. § 1983 for injuries sustained during Plaintiff's incarceration. Plaintiff alleges Defendants were deliberately indifferent to a threat made against him by another inmate. Plaintiff argues that Defendants knew of the threat the other inmate posed to Plaintiff but failed to take reasonable measures to abate it.

Correctional officers Ryan Krewer and Andrew Fox, the sole remaining Defendants, moved for summary judgment. (Dkt. 88.) They argue there is no evidence showing either Plaintiff's knowledge or their own knowledge of impending violence, harm, or threats to Plaintiff by the other inmate.

As explained below, there is no genuine dispute as to any material fact regarding Plaintiff's claims against either Defendant Fox or Defendant Krewer. Plaintiff's potential knowledge of an impending threat is immaterial, and it is

undisputed that Defendants did not have actual knowledge of an impending threat of violence by the inmate toward Plaintiff. As such, Plaintiff cannot prove Defendants' actual knowledge of a specific threat against Plaintiff, a showing that is required to sustain this Section 1983 failure-to-protect claim. Accordingly, the motion for summary judgment is granted.

I. BACKGROUND

In September 2018, Plaintiff was an IDOC inmate at Stateville Correctional Center—Northern Reception Center (NRC). (Dkt 90 ¶ 1.) During all relevant times, Defendant Ryan Krewer was a lieutenant at NRC, and Defendant Andrew Fox was a sergeant at NRC. (*Id.* ¶¶ 2–3; *see id.* ¶ 23.)

On September 19, 2018, at approximately 10:05 a.m., Correctional Officer Lenora Clayton was escorting Plaintiff from the medical wing of the facility to his cell when they approached another inmate's cell. (Dkt. 90 ¶ 6; Dkt. 90-7 at 6.) As Clayton and Plaintiff neared the cell, the other inmate called out to Plaintiff using an old nickname. (Dkt. 90 ¶ 6.) The other inmate and Plaintiff had known each other since 2004, but Plaintiff had never seen the other inmate at NRC and was unaware of the identity of the person calling him. (*Id.* ¶¶ 7–8.) Plaintiff noticed a folded paper note sticking out through a small opening along the side of the other inmate's cell door. (*Id.* ¶ 9.) Officer Clayton ordered Plaintiff not to take the note, but Plaintiff did so anyway. (*Id.* ¶ 9–10.) Officer Clayton confiscated the note before Plaintiff had the opportunity to read it. (*Id.* ¶¶ 11–12.)

2

Officer Clayton testified that she did not recall sharing any information about the contents of the note with Plaintiff; rather, she read the note in her office after securing Plaintiff in his cell. (Dkt. 90 ¶ 13; Dkt. 90-4 at 18:2–13.) Plaintiff alleges, however, that Officer Clayton read the note silently to herself in his presence, after which she said to him, "I am gonna let you know right now it's not showing you any love . . . . [I]t's not saying anything good about you." (Dkt. 94 ¶ 12.) The note stated:

> Look bro (Ghost man tha God). I know you killed my Twin Fat man. Plus you went to moetown after that but anyways yo so called Homies been put you and dude on blast. You was just on House Aresst not to long ago. I knew where you stay Shorty why you acting like you yo broter. Just come to the yard Friday.

(Dkt. 90-7 at 7.)[1]

Officer Clayton delivered the note to Intelligence Officer James Wilcock, an investigator in the NRC's Internal Affairs Unit, and wrote an incident report describing the event. (Dkt. 90 ¶ 14; Dkt. 90-4 at 23:7–11.) Officer Wilcock instructed Officer Clayton to deliver the note to the shift commander or major on duty, Major Randy Malkowski, who would determine whether the note posed a threat. (*Id.* ¶¶ 15, 17.) Within half an hour, Officer Wilcock made a courtesy telephone call to Major Malkowski to inform him that he would soon be receiving the note and an investigative status ticket relating to the incident. (Dkt. 94 ¶ 57; Dkt. 90-6 at 28:9–30:16.)

---

[1] The note's references to "my Twin" and "yo[ur] brot[h]er" apparently refer to Plaintiff's late younger brother, with whom the other inmate was a friend. (Dkt. 90 ¶ 7; Dkt. 90-7 at 7.) Deposition testimony by various witnesses suggests that the other inmate held Plaintiff responsible for Plaintiff's brother's death. (*See* Dkt. 90-2 at 22:4–9; Dkt. 90-5 at 51:2–14; Dkt. 90-6 at 37:13–24.)

3

Around 11:30 a.m., Defendant Krewer received a phone call (from an individual whose identity Defendant Krewer has since forgotten) ordering him to move Plaintiff and the other inmate to a segregation cell (the "bullpen"), which is used to temporarily separate inmates from the prison population for pending investigations. (Dkt. 90 ¶¶ 20–21; Dkt. 90-3 at 34:1–7; Dkt. 90-5 at 22:7–19; Dkt. 90-7 at 8.) That unknown caller did not inform Defendant Krewer of the reason Plaintiff and the other inmate needed to go to segregation. (Dkt. 90-3 at 36:17–24.) Defendant Krewer informed Defendant Fox of the need to transport the two inmates to segregation and ordered Defendant Fox to assist him in this task. (Dkt. 90 ¶ 22; Dkt. 90-5 at 21:13–22:6; Dkt. 90-7 at 8.)

Defendant Krewer arrived at Plaintiff's cell, ordered Plaintiff to pack up, and told Plaintiff that he did not know why Plaintiff was being taken to segregation. (Dkt. 90 ¶ 24; Dkt. 90-2 at 26:14–19.) Defendant Fox retrieved Plaintiff from his cell, and Defendant Krewer removed the other inmate from his cell. (Dkt. 90 ¶ 30–31; Dkt. 90-5 at 25:7–13, 27:6–8.) Defendants Krewer and Fox handcuffed Plaintiff and the other inmate with their hands behind their backs and led them to segregation together, remaining approximately ten feet away from each other. (Dkt. 90 ¶¶ 26–27, 30–31, 33.) Neither inmate spoke or otherwise interacted with each other or their respective escorts during the walk to segregation. (Dkt. 90 ¶ 34; Dkt. 90-5 at 31:13–32:5.)

Defendant Fox led Plaintiff into the segregation cell and ordered him to sit. (Dkt. 90 ¶ 35; Dkt. 90-5 at 29:6–9.) Defendant Fox left the segregation cell, leaving Plaintiff seated with his hands cuffed behind his back. (Dkt. 90 ¶¶ 35, 38.) Defendant

4

Krewer led the other inmate into the same segregation cell and ordered him to sit in another fixed chair, also with his hands cuffed behind his back. (*Id.* ¶ 36; Dkt. 90-5 at 29:6–11) Defendant Krewer left the cell, and the door locked behind him. (Dkt. 90 ¶ 38; Dkt. 90-3 at 52:5–10.) Defendant Krewer then offered to remove the inmates' handcuffs to make them more comfortable. (Dkt. 90 ¶ 38; Dkt. 90-2 at 29:9–22.) The other inmate offered his hands first to Defendant Krewer through a small opening of the segregation cell door, and Defendant Krewer unclasped one handcuff. (Dkt. 90 ¶ 41; Dkt. 90-2 at 30:24–31:14; Dkt. 90-5 at 38:21–24.)

The other inmate, now with hands free, rushed towards the still-seated and handcuffed Plaintiff and beat him with punches and kicks to the face. (Dkt. 90 ¶ 42; Dkt. 90-3 at 53:11–54:1; Dkt. 90-5 at 34:23–25; Dkt. 94 ¶ 65.) Plaintiff's hands were still cuffed behind his back, leaving him unable to defend himself. (Dkt. 90-1 ¶ 22.) Defendant Krewer shouted orders to stop and struggled to find the correct key to unlock the cell door. (Dkt. 90 ¶¶ 44, 48; Dkt. 90-3 at 54:4–9; Dkt. 90-5 at 34:14–20.) Hearing the shouts, Defendant Fox returned to the bullpen. (Dkt. 90 ¶ 48; Dkt. 90-5 at 34:21–35:4.) A nearby officer, Lieutenant Xavier Taylor, rushed to the scene and ordered the attacking inmate to stop. (Dkt. 90 ¶¶ 45–46; Dkt. 90-5 at 35:11–13.) When he did not comply, Lieutenant Taylor deployed O.C. spray (a pepper spray-like substance) twice through the opening in the segregation cell door, which ended the attack. (Dkt. 90 ¶ 47; Dkt. 90-3 at 55:1–15; Dkt. 90-5 at 36:3–37:11.) The entire attack lasted forty seconds at most, enough time for Plaintiff to lose consciousness and suffer

5

injuries to the face and head. (Dkt. 90-1 ¶¶ 23, 25; Dkt. 90-2 at 31:15–18; Dkt. 90-5 at 37:17–38:11, 42:9–45:14.)

Plaintiff sued Defendants Krewer and Fox under 42 U.S.C. § 1983, arguing that Defendants violated his Eighth Amendment rights when they failed to protect him from the other inmate. (Dkt. 45 ¶¶ 4, 11.) Defendants moved for summary judgment, arguing that the evidence does not permit a finding that either Defendant violated Plaintiff's constitutional rights. (Dkt. 88 at 1.)[2]

## II. STANDARD OF REVIEW

Summary judgment is warranted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Jewett v. Anders*, 521 F.3d 818, 821 (7th Cir. 2008) (quoting *Magin v. Monsanto Co.*, 420 F.3d 697, 686 (7th Cir. 2005)); *see also* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322−23 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All facts and inferences drawn from the evidence must be viewed in the light "most favorable to the nonmoving part[y]." *Palmer v. Franz*, 928

---

[2] Plaintiff has filed motions to supplement his briefing on the motion for summary judgment. (Dkt. 101; Dkt. 102.) Having read the case Plaintiff proposes as the basis for his supplemental briefing, the Court finds that the cited case, *Young v. Jenkins*, No. 18-cv-5718, 2022 WL 425583 (N.D. Ill. Feb. 11, 2022), is not squarely on point. Accordingly, because additional briefing will not aid in the resolution of this motion, the Court denies Plaintiff's motions to file supplemental briefing.

F.3d 560, 563 (7th Cir. 2019) (quoting *Stokes v. Bd. of Educ.*, 599 F.3d 617, 619 (7th Cir. 2010)).

### III. DISCUSSION

In their motion for summary judgment, Defendants Krewer and Fox make two arguments as to why, in their view, they did not fail to protect Plaintiff. Both arguments assert Defendants' lack of actual knowledge of impending harm, a necessary element of Plaintiff's Eighth Amendment failure-to-protect claim. *See Gevas v. McLaughlin*, 798 F.3d 475, 480 (7th Cir. 2015) (quoting *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996)). Defendants first argue there is no evidence in the record that Plaintiff knew of an impending threat that would lead him to tell anyone in a position of authority about that threat. (Dkt. 89 at 5.) Second, independent of what Plaintiff knew or told anyone else, Defendants say they did not have knowledge of a specific threat against Plaintiff from which they failed to protect him. (*Id.* at 6.)

Plaintiff responds by disputing Defendants' factual claim that they did not know of an impending threat against Plaintiff and arguing (correctly) that Plaintiff's own knowledge of an impending threat is not a necessary element of an Eighth Amendment failure-to-protect claim. (Dkt. 93 at 2–3.) As to Defendants' second argument, Plaintiff suggests that Defendants did in fact know of a specific threat independently of Plaintiff sharing that information with them. (*Id.* at 6.)

In their Local Rule 56.1 Statement of Facts, Defendants point to evidence that they did not have actual subjective knowledge of the threat against Plaintiff. Plaintiff has not properly provided contrary evidence under Rule 56.1. As a result, Defendants'

lack of knowledge is admitted and undisputed. This fact leaves Plaintiff unable to establish a necessary element of his failure-to-protect claim.

### A. Legal Standard for Failure-to-Protect Claims

A correctional officer's " 'deliberate indifference' to a substantial risk of harm to an inmate is a violation of the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828–29 (1994). Correctional officers have a duty to "protect prisoners from violence at the hands of other prisoners," because "gratuitously allowing" violence of one prisoner against another serves no legitimate purpose. *Id.* at 833 (quoting *Cortes-Quinones v. Jiminez-Nettleship*, 842 F.2d 556, 558 (1st Cir. 1988)). Enduring violence in prison is "simply not 'part of the penalty that criminal offenders pay for their offenses against society.' " *Id.* at 834 (quoting *Rhodes v. Chapman*, 425 U.S. 337, 346 (1981)); *see also McGill v. Duckworth*, 944 F.2d 344, 347 (7th Cir. 1991) (duty to protect prisoners from each other is a "logical correlative" of the state removing inmates' usual means of self-protection), *overruled on other grounds*.

This prohibition against deliberate indifference extends to prison officials acting under color of state law. *Robinson v. California*, 370 U.S. 660, 664–66 (1962) (incorporating the Eighth Amendment ban against "cruel and unusual punishment" against the states); *see also Balsewicz v. Pawlyk*, 963 F.3d 650, 654 (7th Cir. 2020) (Eighth Amendment right against cruel and unusual punishment is "enforceable against the state of Wisconsin through the Fourteenth Amendment").

Not every injury a prisoner suffers at the hands of another prisoner, however, amounts to a constitutional violation. A prison official is only liable for "deliberate

indifference" if three conditions are met. *Id.* at 654–55. First, the prisoner must have been exposed to or threatened with an objectively serious harm. *Id.* at 654; *Brown v. Budz*, 398 F.3d 904, 910 (7th Cir. 2005) (violation of the Eighth Amendment requires exposure to a substantial risk of serious damage or harm to health; beating suffered at the hands of follow detainee "clearly constitute[d] serious harm"). Second, the official must have had actual—not merely constructive—knowledge of the threat or risk of harm to the prisoner. *Balsewicz*, 963 F.3d at 654–55. A prisoner can often prove actual knowledge by showing that he complained to the prisoner officials about threats to his safety. *McGill*, 944 F.2d at 349; *see also LaBrec v. Walker*, 948 F.3d 836 at 843–44 (7th Cir. 2020) (holding a jury could find prison guards' actual knowledge of a specific risk when the plaintiff repeatedly told them he felt unsafe with a cellmate who was intimidating and acting erratically, and the guards knew the cellmate had previously assaulted a prior roommate). Third, the official must have failed to take reasonable steps to abate the known risk. *Balsewicz*, 963 F.3d at 655.

### B.  Plaintiff's Knowledge of the Threat

The parties' dispute whether Plaintiff had knowledge of the threat before the attack, but that inquiry is irrelevant to the present motion. Under the deliberate indifference standard, the *prisoner official's* knowledge is in question, not the inmate's. It is not a requirement for a plaintiff inmate to be aware of a specific threat against him and then fruitlessly inform a correctional officer of that threat. A showing that a plaintiff complained of a threat may be *sufficient* to prove a deliberate indifference claim. *Pope*, 86 F.3d at 92. Indeed, this is the "ordinary" way in which

9

failure-to-protect claims are proven. *Id.* But a plaintiff's actual knowledge of a specific, impending threat is not a *necessary* condition. *See Farmer*, 511 U.S. at 843; *Tay v. Dennison*, 457 F. Supp. 3d 657, 684 (S.D. Ill. 2020) (actual knowledge of a threat to a transgender prisoner was established not because of the prisoner's personal knowledge, but because the prisoner was part of an identifiable group of prisoners often singled out for attack). Rather, the necessary condition of a failure-to-protect claim is whether the *defendant officers* (who are charged with a plaintiff inmate's safety) subjectively knew of the specific, impending threat against the plaintiff inmate—regardless of the source of that knowledge. *Pope*, 86 F.3d at 92.

Plaintiff's knowledge of a threat would become relevant only if he shared his knowledge of that threat to correctional officers. But Plaintiff does not allege that he informed any correctional officer (including Defendants) of the existence of a threat against him. No evidence suggests Plaintiff had an opportunity to speak with any correctional officers other than Defendants Krewer and Fox from the time when Officer Clayton left his cell until the attack in the bullpen. Further, other than asking Defendant Krewer why he was being moved to segregation, Plaintiff did not speak with anyone until after the attack. (Dkt. 90-2 at 28:21–29:8; Dkt. 90-3 at 50:14–21.) Neither Defendant Krewer nor Defendant Fox, therefore, could have learned from Plaintiff about the threat against Plaintiff.

Plaintiff's assertion that Officer Clayton knew of a specific, impending threat to his safety is also irrelevant because Clayton is not a defendant in this suit, having been dismissed as of April 2020. (Dkt. 93 at 6; Dkt. 45.) Clayton's knowledge of the

10

threat to Plaintiff's safety would be material only if Plaintiff could show that Clayton informed Defendant Krewer or Defendant Fox of the threat. *Balsewicz*, 963 F.3d at 654–55. Plaintiff has not, however, pointed to any evidence showing Clayton did so, again rendering Clayton's knowledge of the threat immaterial to the present motion.

### C. Defendants' Knowledge of the Threat

Because critical factual assertions by Defendants under Local Rule 56.1 are undisputed, no reasonable jury could find that either Defendant Krewer or Defendant Fox had actual knowledge of the threat against Plaintiff before the attack. As explained below, the undisputed facts unequivocally establish that neither Defendant Krewer nor Defendant Fox had actual knowledge of the threat before Plaintiff's assault. Because actual knowledge is a necessary part of a failure-to-protect claim, Plaintiff cannot succeed in his Section 1983 suit.

#### 1. Local Rule 56.1

Local Rule 56.1 governs the procedures for filing and responding to motions for summary judgment in the Northern District of Illinois. *West v. Cattaneo*, 2004 WL 542525 at *1 (N.D. Ill. Mar. 17, 2004). The rule is intended to assist the resolution of summary judgment motions by "organizing the evidence, identifying undisputed facts, and demonstrating precisely how each side propose[s] to prove a disputed fact with admissible evidence." *Bordelon v. Chi. Sch. Reform Bd. of Trs.*, 233 F.3d 524, 527 (7th Cir. 2000) (quoting *Markham v. White*, 172 F.3d 486, 490 (7th Cir. 1999)). Because the district court "does not have the advantage of the parties' familiarity with the record and often cannot afford to spend the time combing through the record

11

to locate the relevant information," this rule helps the Court determine whether a trial is necessary. *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011) (quoting *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 924 (7th Cir. 1994)).

Because of the rule's important function, the district court has broad discretion to require its strict compliance. *See Stevo v. Frasor*, 662 F.3d 880, 886–87 (7th Cir. 2011) ("Because of the high volume of summary judgment motions and the benefits of clear presentation of relevant evidence and law, we have repeatedly held that district judges are entitled to insist on strict compliance with local rules designed to promote the clarity of summary judgment."); *FTC v. Bay Area Bus. Council, Inc.*, 423 F.3d 627, 633 (7th Cir. 2005) ("Because of the important function local rules like Rule 56.1 serve in organizing the evidence and identifying disputed facts, we have consistently upheld the district court's discretion to require strict compliance with those rules."); *Santiago v. Ravideau*, No. 15 C 1856, 2019 WL 1747361, at *2 (N.D. Ill. Apr. 18, 2019) ("Courts expect strict compliance with Local Rule 56.1 and have ample discretion to strike improper submissions."); *Simmons v. McCulloch*, No. 10 C 670, 2012 WL 3260415, at *2 (N.D. Ill. Aug. 8, 2012) ("The district court may rigorously enforce compliance with Local Rule 56.1.").

Local Rule 56.1 requires the party moving for summary judgment to file "a statement of materials facts" listed in "concise numbered paragraphs" that is "supported by citation to the specific evidentiary material . . . that supports it." N.D. Ill. R. 56.1(a)(2), (d)(1)–(2); *see also Joyner v. Balas*, No. 21-cv-00302, 2023 WL 5277885, at *1 (N.D. Ill. Aug. 16, 2023). The nonmoving party is then required to file

a response with numbered paragraphs corresponding to the moving party's statement of facts. *Id.* at 56.1(b)(2), (e)(1)–(2); *see also Joyner*, 2023 WL 527885, at *1. Each numbered response "must admit the asserted fact, dispute the asserted fact, or admit in part and dispute in part the asserted fact." *Id.* at 56.1(e)(2); *Kumar v. Accreditation Council for Graduate Med. Educ.*, No. 21 CV 2822, 2023 WL 22079, at *1 (N.D. Ill. Jan. 3, 2023). The numbered paragraphs must also "set forth the text of the asserted fact" and then "set forth the response." N.D. Ill. R. 56.1(e)(2).

In disputing an asserted fact, the nonmoving party "must cite specific evidentiary material that controverts the fact and must concisely explain how the cited material controverts the asserted fact." *Id.* 56.1(e)(3). Mere disagreement with the opponent's factual statement "is inadequate unless made with appropriate citation to the record." *Joyner*, 2023 WL 5277885, at *1. Any fact not controverted with specific citations "may be deemed admitted." N.D. Ill. R. 56.1(e)(3); *Joyner*, 2023 WL 5277885, at *1. Any fact the nonmoving party fails to admit or deny—that is, any fact the nonmoving party fails to address at all—is deemed undisputed. *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 218–19 (7th Cir. 2015) ("The non-moving party's failure to admit or deny facts as presented in the moving party's statement or to cite to any admissible evidence to support facts presented in response by the non-moving party render the facts presented by the moving party as undisputed.").

In addition to its response to the moving party's statement of fact, the nonmoving party may assert additional material facts not set forth in the moving party's statement of facts. *Id.* at 56.1(b)(3). These additional facts must be supported

13

"by citation to the specific evidentiary material." *Id.* at 56.1(d)(2).

### 2. Plaintiff's Response to Defendants' Rule 56.1 Statement of Facts

Plaintiff's response to Defendants' statement of facts does not meet the requirements of Rule 56.1. Defendants' statement of facts consists of 53 numbered paragraphs, meaning Plaintiff's response must also consist of 53 numbered responses, plus any additional facts Plaintiff wishes to assert. Plaintiff's response, however, consists of only one numbered paragraph (¶ 12), which Plaintiff disputes. The remaining paragraphs (¶¶ 1–11, 13–53) in Defendants' Rule 56.1 statement of facts are not addressed in any way in Plaintiff's response. (*Id.*) Plaintiff's response also asserts fourteen additional facts, as Rule 56.1(b)(3) permits. (Dkt. 94.)

As to the single disputed paragraph (¶ 12), it complies with Rule 56.1(b)(2): (1) it is properly numbered, (2) it properly sets forth the text of the fact, (3) it explicitly denies that fact, and (4) it supports the denial with specific evidentiary material. (Dkt. 94 at 1; *see also* N.D. Ill. R. 56.1(b)(2).) As a properly disputed paragraph, the Court can refer to ¶ 12 in considering its ruling on the motion for summary judgment. *See Santiago*, 2019 WL 1747361, at *3.

As to the additional fourteen asserted paragraphs (¶¶ 54–67), they also comply with Rule 56.1(b)(3) because they are: (1) listed in "concise numbered paragraphs" and (2) "supported by specific evidentiary material." (Dkt. 94 at 1–3; N.D. Ill. R. 56.1(b)(3).) As properly asserted additional facts, the Court can consider ¶¶ 54–67 in ruling on the motion for summary judgment. *See Komaniecki v. Ill. Works, Inc. Ret. Accumulation Plan*, No. 21-cv-2492, 2023 WL 698817, at *3 (N.D. Ill. Sept. 22, 2023)

(stating the nonmoving party's statement of "additional facts will be considered only to the extent that they appear in the plaintiff's Rule 56.1(b)(3) statement of additional facts") (cleaned up).

As to the remaining paragraphs in Defendants' statement of facts (¶¶ 1–11, 13–53), they are left unaddressed in Plaintiff's response and, therefore, do not comply with Rule 56.1(b)(2). (Dkt. 94; N.D. Ill. R. 56.1(b)(2).) Accordingly, the Court deems the facts in ¶¶ 1–11 and 13–53 of the Defendants' statement of facts as undisputed. *See Curtis*, 807 F.3d at 218–19; *Junior v. Anderson*, No. 09 C 813, 2011 WL 3290313, at *2 (N.D. Ill. Aug. 1, 2011) ("A court may consider to be true any uncontested fact in the movant's Rule 56.1 Statement that is not addressed by the nonmovant.").

Although Plaintiff did not strictly comply with Rule 56.1 in his response, mere "failure to comply with Local Rule 56.1, does not, of course, automatically result in judgment for the movant." *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006). Defendants, as the movant, still bear the burden of showing that they are entitled to judgment as a matter of law. *Id.*

In ruling on this motion, the Court considers the following facts: (1) the disputed fact stated in ¶ 12 (Dkt. 90, Dkt. 94); (2) the additional facts stated in ¶¶ 54–67 (Dkt. 94); and (3) the undisputed facts stated in ¶¶ 1–11 and 13–53 (Dkt. 90).

### 3. Defendant Krewer's Knowledge of a Threat

Plaintiff suggests in his response to Defendants' motion for summary judgment that Defendant Krewer may have learned of the threat against Plaintiff directly from Officer Clayton or Intelligence Officer Wilcock and subsequently decided to conduct

15

an investigation on his own initiative. (Dkt. 93 at 5.) Plaintiff also suggests that Defendant Krewer "le[ft] out material facts [in the incident report] that would probably negatively reflect on him," implying that Defendant Krewer lied about his knowledge of a threat to Plaintiff to protect himself. (*Id.* at 5–6.) These assertions, however, are not mentioned in Plaintiff's response to Defendants' Rule 56.1 statement of facts; Plaintiff only makes these assertions in his response in opposition to Defendants' motion for summary judgment. Even if the Court construes these assertions as "additional facts" pursuant to Rule 56.1(b)(3), the Court still cannot consider them in deciding this motion because Plaintiff does not cite "specific evidentiary material" to support those assertions—as required by Rule 56.1.

In addition to Plaintiff's failure to support his assertions about Defendant Krewer's knowledge of a threat, Plaintiff does not dispute several dispositive facts in Defendants' Rule 56.1(a)(2) statement of facts: (1) "[Defendant] Krewer did not find out why Plaintiff and [the] other inmate were being transferred to segregation on the date of the incident until after the alleged incident in the bullpen occurred" (Dkt. 90 ¶ 53); (2) Defendant Krewer received a phone call from an unknown person ordering him to transport Plaintiff and the other inmate to segregation, and the unknown person did not tell Defendant Krewer why the inmates were being moved to segregation (*Id.* ¶ 20–21); (3) when Defendant Krewer arrived at Plaintiff's cell to move him to segregation, he "told Plaintiff that he did not know the reason why Plaintiff and the other inmate were being sent to segregation" (*Id.* ¶ 24); (4) Defendant Krewer removed the other inmate's handcuffs to make them more

comfortable, because "he did not know why the Plaintiff and the other inmate were in segregation" (*Id.* ¶ 39); (5) Officer Clayton did not recall ever speaking with Defendant Krewer about the note she retrieved from Plaintiff (*Id.* ¶ 18); and (6) Defendant Krewer had no previous interactions with Plaintiff and the other inmate before the incident in question and therefore no reason to suspect a heightened risk of danger to Plaintiff absent being told of a specific threat. (*Id.* ¶ 25.)

Plaintiff did not specifically admit or deny any of these six facts. In fact, Plaintiff did not address any of these facts at all. Accordingly, all six facts are deemed undisputed. *Curtis*, 807 F.3d at 218–19. Further, Plaintiff's one disputed fact (Dkt. 94 ¶ 12) does not address Defendant Krewer's actual knowledge of a threat to Plaintiff, nor do any of Plaintiff's additional asserted facts (*Id.* ¶ 54–67). It is therefore undisputed that Defendant Krewer had no knowledge of the reason for the inmates' investigation before the attack in the bullpen. As such, Defendant Krewer did not have actual knowledge of a specific, impending threat which he could have reasonably prevented. *McGill*, 944 F.3d at 349; *Pope*, 86 F.3d at 92. Plaintiff thus cannot meet his burden on the second element of his failure-to-protect § 1983 claim; no reasonable trier of fact could find that Defendant Krewer was deliberately indifferent to a specific, actual threat against Plaintiff's safety before the attack. Plaintiff's claims against Defendant Krewer fail. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017); *Dale v Poston*, 548 F.3d 563, 569 (7th Cir. 2008).

17

#### 4. Defendant Fox's Knowledge of a Threat

As to Defendant Fox, Plaintiff makes even fewer arguments alleging actual knowledge of a threat. For similar reasons as stated above, the Court deems the following dispositive facts undisputed: (1) "[Defendant] Fox does not recall ever talking to Officer Clayton about the incident that gave rise to this lawsuit" (Dkt. 90 ¶ 19); (2) "[Defendant] Fox had no knowledge of why the two inmates were being investigated" (*Id.* ¶ 23); and (3) "[Defendant] Fox did not find out why the Plaintiff and the other inmate were being transported to segregation until after the date of the incident in the bullpen." (*Id.* ¶ 52). In addition, Plaintiff's additional asserted facts in his Rule 56.1(b)(2) response to Defendants' statement of facts do not speak to Defendant Fox's actual knowledge of a threat to the inmates, nor does the single disputed fact (¶ 12).

Just as with Defendant Krewer, if Defendant Fox did not know the reason for which the two inmates were being investigated before the attack in the segregation cell, he could not have known of a specific, actual threat against Plaintiff's safety or been "deliberately indifferent" to that threat. *McGill*, 944 F.3d at 349; *Pope*, 86 F.3d at 92. Plaintiff has not, therefore, met his summary judgment burden, and his claims against Defendant Fox also fail. *Grant*, 870 F.3d at 568; *Dale,* 548 F.3d at 569.

### IV. CONCLUSION

Defendants Fox and Krewer's motion for summary judgment (Dkt. 88) is granted.

18

SO ORDERED in No. 19-cv-02266.

Date: September 30, 2023

                                                JOHN F. KNESS  
                                                United States District Judge